| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

| | |
|---|---|
| Luz M. Sanchez, § | |
| § | |
| Plaintiff, § | |
| § | |
| versus § | Civil Action H-12-862 |
| § | |
| The Kansas City § | |
| Southern Railway Company, § | |
| § | |
| Defendant. § | |

# Opinion on Summary Judgment

1. *Introduction.*

   A train killed a man when he trespassed onto its tracks. His mother says that the railway company is responsible because the train did not stop before hitting him. The company did what it was supposed to do and blew the train's horn well before nearing the man. The company will prevail.

2. *Background.*

   According to his mother, on the afternoon of February 19, 2010, nineteen-year-old Joel Joshua Ayaquica got off a bus at the intersection of Braeswood Boulevard and Interstate 610 in Houston to go to a friend's house. He likely walked eastward along the frontage road of the highway until he reached a pair of tracks that went north-to-south. Instead of continuing on the frontage road before turning south on Stella Link Road, Ayaquica turned right and began walking southward on the train tracks, as he had done other times before.

   As he walked down the tracks, a train operated by the Kansas City Southern Railway Company was traveling southward on the eastern pair of tracks. The train had three locomotives and ninety-nine loaded grain cars, was more than 6,000-feet long, and weighed more than 13,000 tons. It was going 39 miles-per-hour in a 40 miles-per-hour zone.

   After the train crossed Beechnut Street – north of the highway frontage road – the

engineer and conductor saw Ayaquica walking outside of the western rail of their pair of tracks. Despite being in a quiet zone – an area where trains do not blow their horns as they approach intersections – the crew began blowing the train's horn as it crossed Braeswood to warn Ayaquica. He moved in between the rails, directly in the path of the train. He then moved left to just outside of the eastern rail, still walking southward.

Before the intersection with West Bellfort Avenue, the train – still blowing its horn – hit and killed Ayaquica as he walked on the ballast outside of the eastern rail and still within the width of the train. Marijuana metabolites were present in his blood but it is unclear whether he was high.

2.   Duty.

Luz Sanchez – Ayaquica's mother – says that the crew was negligent because they did not stop or slow the train enough to avoid hitting him, did not warn him adequately, and were not attentive to the possibility of people on the track. She says that the train could have stopped and not hit him if it had pulled the brake within 45 seconds after first blowing the horn.

   A.   Stopping or Slowing.

The railway says that because the crew saw no signs that Ayaquica would not or could not move one more step to safety, they did not need to stop or slow the train.

The engineer and conduct could presume that Ayaquica would act to stay alive and move out of the way, especially because he had moved twice already.[1] They did not need to stop or slow the train unless it was apparent that he refused to leave or could not leave because he was unaware of the train's approach or unable to move.[2]

Sanchez says that the crew saw that Ayaquica was unaware of the train because he did not "turn around" at the sound of the horn.[3] In the case she hands up, the man was deaf and

---

[1] *Sisti v. Thompson*, 229 S.W.2d 610, 614–615 (Tex. 1950); *San Antonio & Aransas Pass Ry. Co. v. McMillan*, 102 S.W. 103, 104 (Tex. 1907).

[2] *Sisti*, 229 S.W. at 615; *Fort Worth & Denver Ry. Co. v. Shetter*, 59 S.W. 533, 535 (Tex. 1900).

[3] *Int'l & Great N. R.R. Co. v. Munn*, 102 S.W. 442, 444 (Tex. Civ. App. 1907).

walking in the center of the track with his head down and his hat pulled over his eyes. Although the train rang its bell and blew its horn, the man stayed in the middle of the track.[4]

Unlike that case, Ayaquica moved across the tracks. He did not stay in the middle of the tracks, was not immobile, and did not appear unwilling to move. For more than a minute and twenty seconds – and until the moment the train hit him – the crew blew the horn at least ten times. While he may not have turned around to see the train or acknowledge its presence, he crossed the tracks and by all apparent indications was continuing to move out of its way. He did not act as if he did not hear the horn and the oncoming train. He must have heard the whistle and felt the ground shake as the train neared.

Even if Sanchez is correct and the train could have stopped in sufficient time to avoid hitting him, she does not know when he moved into the middle of the rails. He may have moved in front of the train more than 45 seconds after the first warning when it could not stop from hitting him.

Ayaquica trespassed and walked on the tracks, knowing the danger. His mother testified that he was familiar with the tracks and had walked along them many times before. When the crew saw him, they blew its horn and saw him move across the tracks to their left. They could not know that he would not continue to move out of the way. They had no duty to stop or slow the train.

B. *Warning.*

Sanchez says that the crew did not adequately warn Ayaquica of their approach. She says that their manual requires a succession of short bursts of the horn and that the crew blew the horn in long, drawn-out sections.

From the moment that they saw him, the crew blew the horn repeatedly for over a minute. They did not stop blowing it until after the collision. The horn was not the only warning. A train of that size would vibrate the entire roadbed as it approached. Even at the last moment, he had an opportunity to step aside or dive to safety. The warning was more than adequate.

---

[4] *Id.* at 443.

### C. Look-Out.

Sanchez says that the crew did not properly keep watch for trespassers on the tracks. The crew's vigilance is highlighted by the fact that they saw him and blew the horn for more than a minute; they did exactly what they should have done.

### 3. Negligence.

The railway says that Sanchez may not recover because Ayaquica was more at fault; he trespassed onto railroad property, walked on the tracks, and, in the face of repeated warnings, did not move out of the way of the approaching train. She agrees that he was negligent but says that the crew should have pulled the emergency brake to avoid the collision.

A crew cannot pull the emergency brake every time they see a person on or near the tracks ill-advisedly of his own choice. The train may presume that people will move out of its way and this crew had nothing to change their belief that he would. He did move, but did so inadequately.

### 4. Conclusion.

Joel Joshua Ayaquica chose to trespass and walk on an active railway. He knew the dangers. While the accident and his death are a tragedy, the crew did everything it was supposed to do: they saw him on the tracks and warned him of their approach continually. He appeared to be moving out of the way, and the crew had no reason to try to stop the train. Luz Sanchez – individually and as representative of the estate of Joel Joshua Ayaquica – will recover nothing from the Kansas City Southern Railway Company.

Signed on December 24, 2012, at Houston, Texas.

Lynn N. Hughes
United States District Judge